# MEMORANDUM

OF A

## CASE NOT REPORTED IN FULL.

---

GEORGE H. CHEEVER, ADMINISTRATOR, ETC., OF WIL-
LIAM W. CHEEVER, DECEASED, APPELLANT, *v.* GAZA-
WAY DE R. LAMAR, EXECUTOR, ETC., OF GAZAWAY
B. LAMAR, RESPONDENT.

*Partnership books of account — prima facie evidence as between the partners —
Interest on money advanced by one partner to the partnership — from what time
allowed.*

APPEAL from a judgment in favor of the defendant for the sum
of $223,781.72, entered on the report of a referee.

The judgment was recovered upon dealings betwen the plain-
tiff's intestate and the defendant's testator, and between them and
one Charles A. L. Lamar, in the purchase and sale of guano, and
also in the purchase and sale of cotton. Upon the cotton trans-
actions a balance existed in favor of the plaintiff, but, upon the
preceding transcations in guano, a large indebtedness was found
by the referee against the intestate. The contest in the case
between the parties, on the point of liability, was substantially
limited to the balance adjudged in favor of the defendant upon
the guano transactions. As to them, it was held, by the referee,
that the intestate and testator were partners, and that Charles A.
L. Lamar was also a member of the firm. The loss upon these
transactions was, therefore, divided into three parts, one of which
was charged against the plaintiff's intestate in this case. It
appeared that a partnership had actually been formed between
these parties, and that a letter was written by the president of "The
American Guano Company" to the testator and the intestate,
offering to them the agency for the sale of American guano for

the period of ten years, in the six States of North Carolina, South Carolina, Georgia, Florida, Alabama and Tennessee. This guano, according to the proposition contained in the letter, was to be sold to these parties by the company, and by them made the subject of business transactions between themselves; and they, in writing, accepted the proposed agency and terms of sale.

After this was done, these parties appear to have associated with themselves Charles A. S. Lamar, and they soon afterward entered upon the transaction of this business. The guano was shipped to these persons at Savannah, in the State of Georgia, and was there received for sale and distribution through these States. The business continued until the war of the rebellion broke out, when it was suspended, the guano stored in sheds, which were afterward broken down, exposing it to the weather, which, in the end, rendered most of it worthless, and in that manner the large loss, made the subject of controversy in this case, was incurred.

The court, at General Term, said : " It was objected upon the trial, and the same objection has also been taken in support of the appeal, that the books received by the referee were not evidence against the estate of the intestate, Cheever, for the reasons that the accounts in them were kept by the testator himself, so far as they professed to record the guano transactions, in the city of New York, while the business was chiefly carried on in the city of Savannah, and that these books were simply the private and personal books of the testator. It did appear that, prior to April, 1861, they had been kept by the testator, Lamar, in the city of New York, and he then carried them to Savannah, where they remained until the decease of the intestate, which took place on the 14th of July, 1863. They were kept after that time by the book-keeper, Mr. Lawson, in an office, in the building of the Bank of Commerce, in Savannah, of which the testator was the president. But it appeared that the intestate, while in Savannah, devoted a considerable portion of his time to the business in this office ; that the books, after they were taken there, were kept in the same room,' and frequently laid open upon the desk ; that Cheever was consulted as to entries about to be made in them by the book-keeper, in order to supply the material, or date, out of

which they were afterwards made. It also appeared that some of the entries were made the subject of conversation with the intestate, for the purpose of securing explanations and information as to their proper form, and these were the only books which these parties had in which the transactions of either the guano or cotton business were entered, except that of Charles A. L. Lamar, in which he kept an account only of sales made.

"It does not appear that the intestate ever personally examined either class of entries — those relating to the transactions in guano, or those concerning the purchase of cotton; but it does appear that the books, at all times, were subject to his control, and that he was at liberty, if he chose to do so, to examine all the entries made in them and forming any part of these accounts. No restraints whatever appear to have been imposed upon him in this respect, and if he failed to examine them in point of fact, it was because he probably confided in the accuracy of the entries which had been made by his partner, Mr. Lamar, and after that by this book-keeper. This part of the business seems to have been wholly intrusted by him to these individuals, and no question was made on his part but that they had each performed their duties with the strictest accuracy; and as no other books existed in which any of the entries, unless it were those containing sales of guano made by Charles A. S. Lamar, were in use, in the course of the business of this partnership, these books had all the attributes of, and were in fact partnership books, although they also contained the testator's private accounts.

"The fact that the intestate did not chose to examine them, if such were in truth the case, arose simply out of the circumstance that he elected not to do so, because he probably assumed them to be correct. His conduct was such as constituted an acquiescence in the manner in which the books had been and were being kept. His assent to the transaction of the business, in this way, can well be presumed from what occurred, and for that reason, as well as the others assigned, the books were properly received in evidence. The rule is well settled, as a legal proposition, that partnership books are admissible in evidence for the purpose of showing the state of the partnership affairs.

"To that extent they are *prima facie* evidence, in any contro-

versy arising between the partners, and also between their personal representatives, concerning the state of the partnership transactions. Upon this subject it has been held, that although the books of an individual are not evidence in his favor against others, yet, from the very nature of the case, ' the books of a partnership must be evidence between the partners themselves. Their situation is one of confidence ; they agree to unite, and, as to others, become one person, and the books of the firm are to speak their language, to record their joint transactions, and there is an understanding that these books are to be appealed to, to tell their true situation ; to admit them as evidence, then, is only effectuating their agreement, and using their own criterion to test and ascertain the truth. Such books, therefore, kept subject to the inspection of each, must be admitted as correct until the contrary is shown.' (*Simms* v. *Kirtley*, 1 Monroe [Ky.], 79, 80.) In *Lodge* v. *Prichard* (3 DeG., M. & G., 906), the Lord Chancellor expressed this legal principle in the following words : '*Prima facie* the books of the partnership are evidence among all the partners, for them all, and against them all, owing to the agency which pervaded all the partnership transactions. If one partner succeeded in establishing a case of fraud, that would form the ground for an exception from the general rule. Nor is there anything in the rule to exclude an allegation of a mistaken or erroneous omission or insertion ; the only question is, whether the books are *prima facie* evidence between the partners and their estates. In my opinion they are.' (Id., 906, 909–910.)

"The same principle is stated to be the law in *Allen* v. *Coit* (6 Hill, 318, 321–322). It was there stated, as to an entry in the books of the defendant's, that ' they must all be taken to have had constructive knowledge of it, and it appears they probably had knowledge in fact ; they were affected by the entry, whether made by themselves or their agent, * * * they must moreover be presumed to have understood its true import.' The same thing was repeated by the Chancellor in *Heartt* v. *Corning* (3 Paige, 566, 572), where it was held that it was the duty of the party to look into the accounts within a reasonable time, and to point out the errors, if any existed therein, or he must be considered as having acquiesced in the correctness of the accounts as stated in

the books of the firm, to which both parties had access, during the existence of the partnership. In stating the accounts of partners as between themselves, the entries on the partnership books, to which both partners have had access, at the time when those entries were made, or immediately afterwards, are to be taken as _prima facie_ evidence as to the correctness of those entries, subject, however, to the right of either party to show a mistake or error in the charge or credit.

" In the _U. S. Bank_ v. _Binney_ (5 Mason, 176, 178), it was held by Judge STORY, that the ordinary presumption, in cases of partnerships is, that all the partners had access to the partnership books and might know the contents thereof. In _Fairchild_ v. _Fairchild_ (64 N. Y., 471, 480), the general rule was stated to be, that where members of a firm have access to the books, and an opportunity to know how their accounts are kept, the presumption is that they do know, and there is no conflict in the statement. made of this principle in these authorities, and the others cited in support of this appeal. (See, also, Lindley on Partnerships, 637; _Taylor_ v. _Herring_, 10 Bosw., 452.)

" The books derive their character as evidence from the circumstance that they are kept for the purpose of recording the transactions of the business, with the knowledge and assent of all the partners, and with both liberty and opportunity, at least, to each of them to inspect and rectify them, if any improper entries may be made in them. Such was the character of these books, and the intestate was at liberty to inspect them if he had been disposed to do so, as fully and completely as he might have desired. This privilege and this opportunity extended to all the entries, as well those made after the books were taken to Savannah, in April, 1861, as those made by Lamar while they were in the city of New York, and the fact that they were kept there by Lamar, from which point the shipments and delivery of the guano were directed, and no other book, except simply that showing certain sales and kept by Charles A. L. Lamar, was used in the course of the final business, are circumstances from which it may be inferred that the books were so kept at New York, with the assent and approval of the intestate. They were the partnership books, and proper evidence in the case, even though they contained

Lamar's personal accounts also, and the objections taken to them as such were rightly overruled by the referee. These books confirmed the evidence of the witness Lawson, and that afforded by the letter of the guano company, indicating the existence of an actual partnership between those persons, and they also show the cost and amount of the guano received, which was afterwards lost, as was proved without contradiction as to the fact. The accounts were kept in form between these persons as partners in the guano business, showing each to have had an interest in it to the extent of one-third, and as it was proved that the funds for purchasing the guano were advanced by the testator solely, they substantially established the amount the intestate was chargeable with for the losses incurred in this part of the business, and these losses were consequently properly applied in extinguishment of the balance appearing in favor of the intestate upon the cotton transactions, and made the basis of the judgment against the plaintiff.  *  *  *

"It has been further objected that interest should not have been allowed by the referee on the amount due to the testator for moneys advanced by him in this business, and the cases of *Jackson* v. *Johnson* (11 Hun, 509; *Terrell* v. *Jones* (39 Cal., 655), and *Tutt* v. *Ladd* (50 Ga., 350), are relied upon as sustaining this objection. But that they do not entirely do so is clear from the circumstance that they relate to claims for interest on the amount invested in the business by one of the partners while it was being carried on. The present case is entirely different in this respect, as to so much of the interest as was allowed from the 14th of July, 1863, for at that time the intestate died and the partnership was dissolved, and the testator then became entitled to be reimbursed for the advances he had made, and in addition to that, the guano business had been effectually terminated by the loss of almost all its entire stock in trade. There was then a simple debt existing in favor of the testator against his co-partners for the reimbursement of two-thirds of his advances; one-third of this amount was due from the intestate's estate, and for the reason assigned, there seems to have been no impropriety in allowing interest upon that third. (*Johnson* v. *Hartshorne*, 52 N. Y., 173, 177–178.) As to the interest which was allowed before the 14th of July,

1863, these authorities appear to be directly applicable, for up to that time no adjustment of the guano account was made, and no positive termination had taken place of the business carried on by means of that commodity. The sales before that, it is true, were very small, but still sufficient to afford the business a nominal existence, at least. This preceding interest, for these reasons, and under these authorities, should not have been allowed in the computation made by the referee."

*Scott & Crowell*, for the appellant. *Edw. N. Dickerson*, for the respondent.

Opinion by DANIELS, J.; BRADY, P. J., and INGALLS, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.